IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH PRISE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1470 |
| | ) | |
| v. | ) | |
| | ) | |
| ALDERWOODS GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**CONTI, District Judge**

### I. Introduction

Pending before the court is a renewed motion for judgment as a matter of law (the "Motion") (Defendant Alderwoods Group, Inc.'s Renewed Motion for Judgment as a Matter of Law (ECF No. 278)), filed by defendant Alderwoods Group, Inc. ("defendant" or Alderwoods"), pursuant to Federal Rule of Civil Procedure 50(b). The dispositive issue in the Motion is whether, under the circumstances of the case, plaintiff Deborah Prise ("plaintiff" or "Prise") suffered an adverse employment action sufficient to establish an unlawful retaliatory suspension by defendant. For the reasons set forth below, the Motion will be denied.

## II.     Background[1]

In 2006, Prise brought claims of employment discrimination against Alderwoods alleging that defendant subjected her to various forms of illegal discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 PA. CON. STAT. §§ 951 et seq. (the "PHRA"), and the Equal Pay Act, 29 U.S.C. § 206(d). On September 21, 2009, this court issued a memorandum opinion and an order granting Alderwoods Group, Inc.'s motion for summary judgment (ECF No. 169) with respect to all claims except plaintiff's retaliation claims under Title VII and the PHRA. With respect to the retaliation claims, the court concluded, <u>inter alia</u>, that genuine material issues of fact were in dispute about whether plaintiff was fully paid and if she suffered an adverse employment action necessary to state a claim. As a result, the only claims that remained for trial[2] were plaintiff's retaliation claims.

On May 4, 2010, plaintiff's claims of retaliatory discrimination went to trial before a jury. At the close of plaintiff's case-in-chief on May 10, 2010, defendants moved for judgment as a matter of law under Rule 50(a). Defendant argued that plaintiff could not establish an unlawful retaliatory suspension because she failed to show that she was not fully paid during the suspension. Defendant argued that as a result of this failure, plaintiff could not prove the adverse

---

[1] For purposes of the Motion, the court assumes the parties' familiarity with its prior memorandum opinion and order, dated September 21, 2009. (ECF No. 169) (<u>Prise v. Alderwoods Gr., Inc.</u>, 657 F. Supp. 2d 564 (W.D. Pa. 2009)). The operative facts will be discussed in this opinion only to the extent they are directly relevant to the pending renewed motion for judgment as a matter of law. (ECF No. 278.).

[2] At a pretrial conference held on April 26, 2009, the court informed the parties that if the jury found liability for economic damages, the court would determine whether plaintiff sufficiently proved front pay and back pay. In stating that the jury's role on the issues of determining front pay is only advisory to the court, the court relied upon <u>Donlin v. Philips Lighting North America Corp.</u>, 581 F.3d 73, 88 n.11 (3d Cir. 2009) ("The District Court [is] not required to submit the issue of front pay to the advisory jury . . . because a bench trial is sufficient to determine an equitable award such as front pay.") (Tr. Pretrial Motions, Apr. 26, 2010 (ECF No. 278-1 at 3).)

employment action necessary to state a claim for retaliatory suspension. The court deferred ruling on this initial Rule 50 motion until after the jury verdict was returned.

On May 14, 2010, the jury rendered a verdict in favor of Prise with respect to her claim that Alderwoods Group, Inc. retaliated against Prise when it suspended her after she filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and the Pennsylvania Human Relations Commission (the "PHRC"). The jury rendered a verdict in favor of Alderwoods on all other retaliation claims filed by Prise. (See Verdict Slip (ECF No. 251).) No damages were awarded.

On September 29, 2010, defendant filed the instant Motion with respect to the retaliation claim on which plaintiff prevailed concerning her suspension after she filed a charge of discrimination with the EEOC and the PHRC. On October 19, 2010, plaintiff filed a response to the Motion. (Pl.'s Resp. to Def.'s Renewed Mot. for J. as a Matter of Law (ECF No. 284)). On November 9, 2010, defendant filed a reply brief to plaintiff's response. (Def. Alderwoods Group, Inc.'s Br. in Reply to Pl.'s Opp'n to the Renewed Mot. for J. as a Matter of Law (ECF No. 288).)

III.   **Legal Standard**

A motion for judgment of as a matter of law filed at the end of trial is governed by Federal Rule of Civil Procedure 50(b) which provides:

> **(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a)[3], the court is considered to

---

[3] Rule 50(a)(1) provides: **(a) Judgment as a Matter of Law. (1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: **(A)** resolve the issue against the party; and **(B)** grant a motion

3

> have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
>> **(1)** allow judgment on the verdict, if the jury returned a verdict;
>>
>> **(2)** order a new trial; or
>>
>> **(3)** direct the entry of judgment as a matter of law.

FED. R. CIV. P. 50(b)(1)-(3).

Entry of judgment as a matter of law is a "sparingly" invoked remedy. CGB Occup. Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 383 (3d Cir. 2004). It should only be granted if "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). The court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury. The court may, however, grant the motion if upon review of the record, it can be said as a matter of law that the verdict is not supported by legally sufficient evidence. Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 691-92 (3d Cir. 1993), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa, 316 F.3d 392 (3d Cir. 2003). A mere scintilla of evidence presented by the plaintiff is not sufficient to deny a motion for judgment as a matter of law. Walter v. Holiday Inns, Inc., 985 F.2d 1232,

---

for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. FED. R. CIV. P. 50(a)(1).

1238 (3d Cir. 1993). "'The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.'" Id. (quoting Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978)). In resolving this motion, the court should consider all the evidence available, excluding only evidence which the jury was not entitled to believe, and drawing all reasonable inferences in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000). A district court may grant a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), "'only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001) (quoting Powell v. J.T. Posey Co., 766 F.2d 131, 133-34 (3d Cir. 1985)).[4]

## IV. Discussion

### A. The Parties' Positions

#### 1. Defendant's Position

Defendant argues that plaintiff was required at trial to prove each element of a prima facie retaliation claim. Prior to submitting the case to the jury, defendant argued that plaintiff's retaliation claim should be dismissed because she did not adduce any evidence of economic damages and therefore could not prove the specific adverse employment action element of a retaliation claim. In the Motion, defendant reiterates that plaintiff cannot prove a valid retaliation claim for purposes of retaliation under Title VII absent showing she suffered a materially adverse employment action. Defendant reargues that plaintiff failed to show such

---

[4] At the time Trabal v. Wells Fargo Armored Service Corp., 269 F.3d 243 (3d Cir. 2001), was decided, a motion filed pursuant to the Federal Rule of Civil Procedure 50(b) was referred to as a motion for judgment notwithstanding the verdict ("judgment n.o.v."). Traval, 269 F.3d at 249.

5

adverse action because she did not provide any evidence of economic loss related to her suspension. Defendant's position is predicated on a two-fold proposition: 1) a fully paid leave cannot rise to the level of a materially adverse action for purposes of retaliation under Title VII; and 2) under the circumstances, plaintiff's suspension was a fully paid leave.

Defendant contends that plaintiff defeated summary judgment on this point by promising to demonstrate at trial that her immediate supervisor at the relevant time, Pat McDermott ("McDermott"), received commissions to which plaintiff was entitled. Defendant argues that plaintiff's failure to do is fatal to her retaliation claim. Defendant notes that the jury found that plaintiff did not suffer any economic loss as a result of her suspension and that plaintiff expressly forfeited her claim for back pay. Defendant maintains that plaintiff otherwise admitted that she was fully paid during her suspension. (Mot. 5 (ECF No. 278).)

Defendant reasons that the court denied its Rule 50(a) motion because plaintiff could later produce during the trial additional evidence of her allegedly lost payment. Id. Defendant argues that plaintiff's claim of lost commissions during her suspension was subsumed in her express abandonment of her claim to any back pay. Defendant concludes that the result of plaintiff's failure to produce any specific evidence of her lost commissions is that she cannot meet her burden to show that her suspension period was not fully paid, and consequently failed to establish the requisite adverse employment action element of a prima facie Title VII retaliation claim.

Defendant relies upon one district court decision affirmed by the Court of Appeals for the Third Circuit and a number of decisions in other circuits holding that a fully paid suspension cannot be a materially adverse employment action as a matter of law. See, e.g., Solomon v. Phila. Newspapers, Inc., No. 05-05326, 2008 WL 2221856, 2008 U.S. Dist. LEXIS 41978, at

*49 (E.D. Pa. May 21, 2008) (holding that paid leave is not materially adverse), aff'd, 2009 WL 215340, 2009 U.S. App. LEXIS 2210 (3d Cir. 2009)).[5]

        2.     Plaintiff's Response (ECF No. 284)

Plaintiff argues that defendant misstates the test for what constitutes an adverse employment action under the law. Plaintiff contends that defendant ignores the standard set forth in Burlington Northern v. White, 548 U.S. 53 (2006), which defines a materially adverse employment action for a retaliation claim to mean that the retaliatory action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 67-68. Plaintiff maintains that it is her lost commissions and the loss of the opportunity for earning commissions which would discourage a reasonable employee from filing a charge of discrimination. Plaintiff notes that the court denied defendant's Rule 50(a) motion on the basis that defendant's assertion would place a difficult burden on plaintiff and require conjecture, i.e., defendant's position that plaintiff needed to introduce testimony with respect to specific instances - which in fact occurred - in order to provide evidence that her leave was not fully paid.

---

[5] See also Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 786 (7th Cir. 2007) (no material adversity where plaintiff did "not claim that his position, salary, or benefits were impacted by the paid administrative leave"); Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006) ("administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action"); Sturdivant v. Geren, Civ. A. No. 09-586, 2009 WL 4030738, at *6 (E.D. Va. Nov. 19, 2009) (90 days of paid leave not materially adverse where it did not entail a "demotion or reduction in pay"), aff'd sub nom. Sturdivant v. McHugh, No. 09-2376, 2010 U.S. App. LEXIS 17235 (4th Cir. 2010); Grice v. Balt. County, No. 07-1701, 2008 U.S. Dist. LEXIS 91114, at *24 (D. Md. Nov. 5, 2008) (no material adversity where plaintiff "maintained her salary during her suspension"), aff'd, 354 F. App'x 742 (4th Cir. 2009); McBride v. Medicalodges, Inc., No. 06-2535, 2008 U.S. Dist. LEXIS 51699, at **23-24 (D. Kan. July 3, 2008) (no material adversity "in the absence of any evidence that the paid suspensions … affected the terms and conditions of [plaintiff's] employment in any respect"); Carter v. Norfolk S. R.R., No. 06-058, 2007 U.S. Dist. LEXIS 93496, at *19 (M.D. Ga. Dec. 20, 2007) (suspension not materially adverse where defendant "arranged for [plaintiff] to receive 'her regular salary of $ 500 a week during her leave of absence.'" (citation omitted)); Helmi v. Solvay Pharms., Inc., No. 05-36, 2006 WL 3392758, at *11 (W.D. Mich. Nov. 21, 2006) (holding that "administrative suspension with pay did not constitute an adverse employment action"); Nix v. Cino, No. 02-4609, 2006 WL 2711625, at *6 (E.D. N.Y. Sept. 21, 2006) (paid leave "without any material change to [plaintiff's] work benefits or job responsibilities" is not materially adverse).

7

Plaintiff contends that she is not required to show the amount of money she lost or the amount she hypothetically could have earned; rather, only that defendant's retaliatory actions "'might have dissuaded a reasonable worker from filing a Charge of Discrimination.'" (Pl.'s Resp. 4 (quoting Burlington, 548 U.S. at 67-68 (ECF No. 284)).) In support, plaintiff points to her testimony at trial that part of her income as a location manager for defendant included commissions she received for the sale of pre-need insurance.

> PLAINTIFF: I think I was making like $11,000 – or $11 and hour as an intern. Then I forget what I was making, $18 an hour as a funeral director. Then I got bumped up to $50,000, plus commission.

(Pl.'s Resp. 4, Ex. 2 (ECF No. 284-1).)

When asked what she perceived to be defendant's discriminatory and retaliatory action, plaintiff responded:

> PLAINTIFF: They suspended me for two weeks.
>
> COUNSEL FOR PLAINTIFF: Was that for approximately the next two weeks, end of September, beginning of October?
>
> PLAINTIFF: Yes. Well, I got paid salary but I didn't have the opportunity to make commissions.
>
> COUNSEL FOR PLAINTIFF: How did you make commissions?
>
> PLAINTIFF: Part of our business wasn't just serving at-need families but also prearranging families.
>   The way you prearrange, you sell the family an insurance policy for the amount of the cost of the funeral and I have an insurance license, so I would get a commission off of the insurance
>
> COUNSEL FOR PLAINTIFF: Were you able to make those sales during the two weeks you were off"?
>
> PLAINTIFF: No.
>
> COUNSEL FOR PLAINTIFF: How did that make you feel at that point to get the final warning and the two-week suspension?

> PLAINTIFF: I was very upset. It was embarrassing, too. It was disheartening to me because I loved my job. I loved my community.

(Pl.'s Resp. 4, Ex. 2 (ECF No. 284-1).)

When asked about the events of the day she learned about her suspension, plaintiff responded:

> COUNSEL FOR PLAINTIFF: What was your reaction to the suspension, Deborah?
>
> PLAINTIFF: I was devastated. I didn't understand it. I thought it was my right to file with the EEOC and that they couldn't do something against me because I did that. I was embarrassed. I was – felt sick over it. I was worried. I didn't know how long it would be. I just didn't understand it. I was totally shaken by it. I was crying.
>
> COUNSEL FOR PLAINTIFF: At the time of your suspension, what was your understanding as to whether or not your salary would be paid or not paid?
>
> PLAINTIFF: He didn't say anything about that and I didn't know.
>
> COUNSEL FOR PLAINTIFF: Were you ultimately paid for the time that you were out, or --
>
> PLAINTIFF: Salary but not commissions.
>
> COUNSEL FOR PLAINTIFF: Do you know if you lost out on any commissions as a result of your suspension?
>
> PLAINTIFF: I know for a fact that I lost some pre-need commission.

(Pl.'s Resp. 4, Ex. 2 (ECF No. 284-1).)

Plaintiff also argues that the jury was duly charged. In support, plaintiff points to the jury instruction that in order for plaintiff to prevail on her retaliation claim, she must prove by a preponderance of the evidence that, "Ms. Prise was subjected to a materially adverse action at the time, or after, the protected conduct took place." (See Pl.'s Resp. 5, Ex. 3 (ECF No. 284-1).) The court further instructed the jury that:

9

> The term "materially adverse" means that Ms. Prise must show the suspension . . . was serious enough that it well **might** have discouraged a reasonable worker from making complaints of discrimination, requesting accommodation or filing a charge of discrimination.

(Pl.'s Resp. 5, Ex. 3 (ECF No. 284-1).)

In addition, plaintiff points to the verdict slip in which the jurors were asked:

> Did the Plaintiff Deborah Prise prove by a preponderance of the evidence that Defendant Alderwoods Group, Inc., retaliated against the Plaintiff by suspending her because she filed a Charge of Discrimination with the EEOC and the PHRA?

(Pl.'s Resp. 5, Ex. 3 (ECF No. 284-1).)

Plaintiff argues that the jury had proper guidance on the legal standard from the court and found plaintiff credible on the issue whether she lost commissions or the opportunity to earn commissions and concluded that such losses would dissuade a reasonable employee from filing a charge of discrimination.

With respect to defendant's allegation that plaintiff did not respond to her previous claim that McDermott received commissions that were rightfully hers, plaintiff contends that she did not do so because she was not aware of the terms of the final contract and therefore could not request a specific amount of commissions lost. Plaintiff avers that she was working on other contracts at the time she was suspended and cannot determine which of those contracts she would have closed on had she not been suspended and lost the opportunity to close. Plaintiff contends that if she had been working, there would have been other opportunities for sales, but that she would have to speculate about the exact amount lost. Plaintiff notes that defendant did not rebut any of her testimony with respect to this issue. Plaintiff contends that although she elected not to seek money damages for the lost sales and opportunities, it does not mean that such damages were not incurred.

Plaintiff argues that the decisions cited by defendant in support of its position that plaintiff's suspension was not a materially adverse employment action are readily distinguishable from this case. Plaintiff notes that the majority of the decisions do not deal with a participation or opposition claim in which the plaintiff was deprived of her ability to earn commissions or involve the loss of commissions resulting from being suspended from the workplace.

3. <u>Defendant's Reply</u>  (ECF No. 288)

In its reply to plaintiff's response, defendant argues that plaintiff misapprehends that she was required to carry the burden of proof that she was not fully paid during the period of time she was suspended from her employment. Defendant contends that this is the sole question before the court. Defendant maintains that the purpose of the trial was to determine whether damages occurred and that plaintiff cannot prevail on her retaliation claim absent damages. Defendant recapitulates that plaintiff's retaliation claim must fail because the jury did not award her any damages and she did not submit any evidence of lost commissions or otherwise demonstrate that she suffered any loss.

In support, defendant points to the transcript of the hearing on April 26, 2010, where the court bifurcated the issues of liability and damages. (See Def.'s Br. 1, Ex. 1 (ECF No. 288-1).) Defendant resubmits that the court determined that bifurcation was necessary to avoid a delay in the trial to see if plaintiff had a "'sufficient foundation for her to testify as to the exact amount that she feels she lost.'" (<u>Id.</u>) (quoting Hr'g Tr. Apr. 26, 2010 (ECF No. 288-1).) Defendant reiterates that the court denied its Rule 50(a) motion because plaintiff would have further opportunity during the trial to prove she lost commissions. (<u>Id.</u>) (citing Trial Tr. May 10, 2010 r. 26, 2010 (ECF No. 278-2).)

Defendant argues that predicating actual harm on loss opportunities would obliterated the standard for retaliation and make every fully paid leave a materially adverse regardless of the circumstances. Defendant suggests that to prove economic harm plaintiff could have submitted evidence of her past commission earnings or submitted evidence of the average commission earnings of other location managers. In support, defendant relies upon, among other decisions, Durham Life Insurance Co. v. Evans, 166 F.3d 139, 145, 156 (3d Cir. 1999), and Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984).

B.  **Adverse Employment Action**

Here, resolution of the instant Motion turns on the narrow issue whether there is sufficient evidence of record to support the jury's verdict that plaintiff's suspension could rise to the level of a materially adverse employment action. In the Memorandum Opinion, this court stated:

> Alderwoods argues that Prise was never subjected to a materially adverse action. (Defs.' Mem.-Prise 16-18.) The question whether a retaliatory action is "materially adverse" under *Burlington Northern* is a question of fact. *Burlington N.,* 548 U.S. at 71, 126 S. Ct. 2405 ("Based on this record, a *jury* could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee.") (emphasis added). The court already concluded that, for purposes of summary judgment, a reasonable jury could find Prise can establish that she was "discharged." Since Prise was unable to earn commissions during the course of her paid suspensions, the court also concluded (for purposes of summary judgment) that a reasonable jury could find these suspensions were adverse employment actions for purposes of the substantive antidiscrimination provisions of Title VII and the PHRA. Because the suspensions could be found to be adverse employment actions, it follows *a fortiori* that a reasonable jury could find the suspensions were "materially adverse" actions within the meaning of *Burlington Northern.*

Prise, 657 F. Supp.2d at 607-08.

Plaintiff correctly states that the test for determining a materially adverse employment action turns on whether the action in issue might dissuade another employee from making or support a charge of discrimination. See Burlington, 548 U.S. at 67-68 (defining a materially adverse employment action as a retaliatory action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination"). During the parties' argument on this issue at trial - at the end of plaintiff's case-in-chief – the following colloquy took place among the court and the parties' counsel:

> THE COURT: The whole question is whether there is sufficient evidence that she received commissions typically for calls – whatever, based on the call level and that because she was laid off, she may have gotten her salary but she did not have the opportunity in the period to earn the commissions and that was the materially adverse action.
>
> COUNSEL FOR DEFENDANT: Your Honor, we would argue she got paid on a pre-need commissions – somebody had to come in and sell an insurance policy to them is what it basically –
>
> THE COURT: But she wasn't able to do that during that period
>
> COUNSEL FOR DEFENDANT: But she demonstrated no evidence during the 11 days when she was at Alderwoods in that second leave period or during that first leave period that there was any opportunity to do that.
> She hasn't demonstrated a call came in, that she would have made a sale, that there was a family that might have – there's nothing in the record that demonstrates one way or the other that any of this material came in.
> So under the case law, if she was fully paid and she was compensated for that leave period, it is not an adverse action.
>
> COUNSEL FOR PLAINTIFF: Your Honor, we agree with you comment before, there were a lot of opportunities to make commissions. She said she lost commissions. She testified to that under oath.
> Under this analysis, if you have a salesperson whose entire salary was based upon commission, so if that person was out for two weeks, under their theory, that would not be an adverse action because the person was out for the two weeks.

13

> It is the same thing here. Part of her income was based upon commissions when she sold pre-need policies and that deprived her of the right of earning that when they suspended her.
>
> COUNSEL FOR DEFENDANT: They could have established that and they could have come forth and established how she knew there was going to be commissions, how much those commissions were going to be for, who the family was.
> If she would have testified --
>
> THE COURT: This puts a very difficult burden on a plaintiff, to put in conjecture evidence as to maybe this one would come, but if she had been making sales, and I don't know the amount of commissions she testified to.
>
> COUNSEL FOR DEFENDANT: She didn't.
>
> COUNSEL FOR PLAINTIFF: She did state that part of her income was based upon commissions. She was licensed as a life insurance person, which you would have to be in order to sell commissions, they were pre-need policies.
>
> COUNSEL FOR DEFENDANT: But that's the problem. She could have laid a foundation that said I received the commissions that were approximately this much per month, this many calls came in.
>
> THE COURT: The problem with these motions . . . [o]nce the motions are made, the plaintiff has an opportunity to come in and put in evidence to make up their case, . . . if the plaintiff wants to overcome the objections.

(Tr. Trial 13-15, May 10, 2010 (ECF NO. 284-1).)

It is clear that an unpaid suspension – under most circumstances - rises to the level of a materially adverse employment action because "'it well might [dissuade] a reasonable worker from making or supporting a charge of discrimination.'" <u>Dodd v. SEPTA</u>, Civ. A. No. 06-4213, 2008 WL 2902618, at *14 (E.D. Pa. July 24, 2008) (quoting <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 72-73 (2006) (citations and internal quotation marks omitted ); <u>see</u>

Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006).). Here, it is not clear, however, that plaintiff's suspension was fully paid.

Plaintiff could meet her burden by demonstrating that her suspension during which she was paid a salary, but was denied the opportunity to earn commissions, was "'likely to deter victims of discrimination from complaining to the EEOC.'" Dodd, 2008 WL 2902618, at *14 (quoting Burlington, 548 U.S. at 68 (citations and internal quotation marks omitted). ) "Whether an action is materially adverse will often depend 'on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" Id. (quoting Burlington, 548 U.S. at 69 (citations and internal quotation marks omitted)).

In Davis v. Mothers Work, Inc., No. Civ. A. 04-3943, 2005 WL 1863211 (E.D. Pa. Aug. 4, 2005), the district court discussed whether the plaintiff's retaliatory suspension could rise to the level of a materially adverse action for purposes of a Title VII discrimination claim, stating:

> [The plaintiff] asserts two additional racial discrimination claims
> on the basis of being sent home from work on June 26, 2002, and
> on the basis of the unfavorable changes to her work schedule.. . .
> These are both adverse employment actions sufficient to state a
> discrimination claim because [the plaintiff] allegedly lost wages as
> a result of these actions.

Davis, 2005 WL 1863211, at * 4 (citing Satterfield v. UPS, No. 00-7190, 2003 U.S. Dist. LEXIS 17229, at **43-44 (S.D. N.Y. Sept. 30, 2003) ("[P]laintiff arguably has shown that she was subjected to an adverse employment action when she was suspended, presumably without pay, for one day in March 1999."); Parkinson v. Anne Arundel Med. Ctr., Inc., 214 F.Supp. 2d 511, 518 (D. Md. 2002) ("Plaintiff's one-day, unpaid suspension ... could constitute an adverse employment action.")). The Davis court compared these decisions with Rose v. Buckeye

Telesystem, Inc., 181 F. Supp.2d 772, 777 (N.D. Ohio 2001) ("Plaintiff's one-day suspension with pay does not constitute an adverse employment action.")).

At least one district court in the Third Circuit, however, has determined that it is retaliatory to place an employee on paid administrative leave while it conducts an investigation. Killen v. Northwestern Human Servs., Inc., Civ. A. No. 06-4100, 2007 WL 2684541, at *7 (E.D. Pa. Sept. 7, 2007). In discussing whether the underlying action in that case rose to the level of a material adverse action for purposes of retaliation, the district court stated:

> Because [the plaintiff] relies in large part on temporal proximity to establish her causal link, however, it is important to her case that the decision to place her on administrative leave also be considered an adverse employment action. As the Sixth Circuit has observed, *Burlington Northern'*s broad definition of what is materially adverse in the retaliation context "permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context." *Michael [v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007]*. That court concluded that placing an employee on paid administrative leave and placing her on a performance plan were materially adverse employment actions for purposes of a retaliation claim. *Id.* We find that the threat of placement on administrative leave and the threat of a formal audit could have dissuaded a reasonable employee from making a discrimination claim. Being placed on administrative leave is potentially embarrassing and a reasonable employee, even one who believes she has followed proper procedures, might avoid making waves if she feared a painstaking audit of her financial dealings would result. They are, therefore, materially adverse actions for purposes of Killen's retaliation claim.

Killen, 2007 WL 2684541, at *7.

Defendant argues the plaintiff failed to show that she was not fully compensated during her suspension. Defendant asserts that, under the case law, a paid suspension cannot be an adverse action. Defendant's argument is misguided. No decision relied upon by defendant is on all fours with the instant case. The majority of decisions indicate that fully paid leave – without

16

more – does not rise to the level of an adverse employment action. Here, however, there is more, i.e., a period of suspension – which at the onset was for an undetermined amount of time – during which plaintiff did not have the opportunity to earn commissions. Plaintiff testified to these circumstances and the jury found that defendant placed plaintiff on suspension in retaliation for her EEOC charges.

Defendant's characterization of the court's rationale for denying its Rule 50(a) motion is oversimplified. Although the court indicated that bifurcation was necessary to avoid a delay in the trial, defendant's conclusion that the court's decision was for the sole purpose to see if plaintiff could sufficiently provide a foundation for the amount she lost is overstated.

Defendant's conclusion that plaintiff's leave was fully paid because she did not adduce proof positive to the contrary collapses the proof of liability with the proof of damages. The court's denial of defendant's Rule 50(a) motion was to allow plaintiff further opportunity to prove she lost commissions. The court's concern at that juncture, in part, went to ascertain whether plaintiff later would adduce testimony about the amount of lost commissions, thereby mooting defendant's objection. Now, the court must squarely confront the issue raised by defendant.

Simply because a fully paid leave may not – in and of itself – be considered a retaliatory material adverse employment action under one set of circumstances, does not mean that a fully paid leave, under another set of circumstances, could never be considered retaliatory. Defendant's position can only be understood to mean that absent damages liability is not an issue. This conflicting proof of damages and liability does not properly resolve the issue whether plaintiff met her burden of presenting sufficient evidence for a reasonable jury to find defendant liable for improperly suspending plaintiff in retaliation for filing charges of discrimination. As

the court indicated in ruling upon defendant's Rule 50(a) motion, defendant's insistence on a rationale resulting in the opposite outcome puts an untenable burden on plaintiff to prove facts by conjecture.

Defendant incorrectly contends that the sole question before the court at this stage is whether plaintiff carried her burden of proof that she was not fully paid during the period of time she was suspended from her employment. Defendant's repeated insistence on this issue misses the point. Plaintiff's burden was to show that, under the circumstances, her suspension might dissuade a reasonable employee from making a complaint if he or she feared that they could be suspended and lose the opportunity to earn commissions they might otherwise earn during the period of the suspension. Plaintiff adduced sufficient evidence for the jury to find that her suspension could have such an adverse impact. Selling pre-need insurance was a part of plaintiff's job and a reasonable jury could conclude that the loss of the opportunity to do so – especially, since it could result in a loss of income – would dissuade an employee from filing an EEOC charge of discrimination, or from supporting another employee who filed such a charge. Defendant did not rebut plaintiff's testimony that she may have lost the opportunity to earn commissions. Plaintiff testified on at least two occasions that she was embarrassed to be suspended and did not know how long the suspension would last.

After viewing all the evidence in plaintiff's favor, which the court is required to do, the court cannot find the record so critically deficient of a minimum quantity of evidence from which the jury might reasonably have determined that defendant's action in suspending plaintiff - during which time she was not afforded the opportunity to earn commissions - might deter victims of discrimination from complaining to the EEOC or support another who has done so. As the court found in the Memorandum Opinion, because – under these circumstances –

plaintiff's suspension could be found to be an adverse employment action, "it follows *a fortiori* that a reasonable jury could find the suspension[] [was] "materially adverse" actions within the meaning of Burlington Northern." Prise, 657 F. Supp. 2d at 608. Here the jury so found. Under these circumstances, granting defendant's motion for judgment on the pleadings would be improper. The jury's finding that plaintiff met her burden is supported by sufficient evidence of record. The court cannot disturb that finding.

V.     **Conclusion**

For the reasons set forth above, the Motion will be denied.

**ORDER**

**AND NOW**, on this 25th day of July, 2011, upon consideration of the renewed motion for judgment as a matter of law filed by defendant Alderwoods Group, Inc. (ECF No. 278), the response thereto filed by plaintiff Deborah Prise (ECF No. 284), and Alderwoods Group, Inc.'s reply (ECF No. 288), **IT IS HEREBY ORDERED**, for the reasons set forth above, that said motion is **DENIED**.

By the court,

/s / JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge